Plan and Section 2.01 of the Plan B Settlement Agreement from the funds received as a result of the exercise of the Call.

(b)      If the Call is exercised on the Effective Date and any of the situations described in Section 4.09(a), (b), or (c) of the Plan B Settlement Agreement are in occurrence as of the Effective Date, then the Trust shall fund the Cooper/Pneumo Escrow Account pursuant to Section 4.09 of the Plan B Settlement Agreement from the funds received as a result of the exercise of the Call on or as soon as reasonably practicable following (but in no event later than ten (10) days after) the Effective Date. The Cooper/Pneumo Escrow Account shall be maintained pursuant to an escrow agreement that gives effect to the provisions of Section 4.09 of the Plan B Settlement Agreement and is otherwise in form and substance reasonably satisfactory to Cooper, FMP, and, to the extent directly related to Pneumo Abex or PCT, Pneumo Abex and/or PCT (as the case may be) (the *"Cooper/Pneumo Escrow Agreement"*). Unless and until the Date of Finality occurs, the Cooper/Pneumo Escrow Account shall be maintained and the assets therein used only to pay the Plan B Settlement Amount pursuant to Section 8.22.1 of the Plan and Section 2.01 of the Plan B Settlement Agreement upon the occurrence of the Plan B Date. Interest accrued on amounts in the Cooper/Pneumo Escrow Account shall be paid as provided in Section 4.09 of the Plan B Settlement Agreement.

### 8.22.4.2.      If Call is Exercised Subsequent to Effective Date.

(a)      If the Call is not exercised on the Effective Date but the Plan B Date occurs on the Effective Date, then Reorganized Federal-Mogul shall pay the Plan B Settlement Amount on behalf of the Trust pursuant to Section 8.22.1 of the Plan and Section 2.01 of the Plan B Settlement Agreement.

(b)      If the Call is not exercised on the Effective Date and any of the situations described in Section 4.09(a), (b), or (c) of the Plan B Settlement Agreement are in occurrence as of the Effective Date, then Reorganized Federal-Mogul shall fund the Cooper/Pneumo Escrow Account on behalf of the Trust pursuant to Section 4.09 of the Plan B Settlement Agreement on or as soon as reasonably practicable following (but in no event later than ten (10) days after) the Effective Date. The Cooper/Pneumo Escrow Account shall be maintained pursuant to the Cooper/Pneumo Escrow Agreement. Unless and until the Date of Finality occurs, the Cooper/Pneumo Escrow Account shall be maintained and the assets therein used only to pay the Plan B Settlement Amount pursuant to Section 8.22.1 of the Plan and Section 2.01 of the Plan B Settlement Agreement upon the occurrence of the Plan B Date. Interest accrued on amounts in the Cooper/Pneumo Escrow Account shall be paid as provided in Section 4.09 of the Plan B Settlement Agreement.

(c)      If the Call is not exercised on the Effective Date, the Trust shall issue and deliver a promissory note in the principal amount of $140,000,000 (the *"Trust Note"*) to Reorganized Federal-Mogul on the Effective Date. The entirety of the obligations under the Trust Note shall become due and payable on the sixty-first (61st) day after the Effective Date. As security for the Trust's obligations to Reorganized Federal-Mogul under the Trust Note, Reorganized Federal-Mogul shall withhold from distribution to the Trust, and shall be granted a possessory security interest in, 7,793,333 shares of the Reorganized Federal-Mogul Class B Common Stock otherwise to be distributed to the Trust pursuant to Section 4.3 of the Plan (the

138

*"Retained Stock"*). Reorganized Federal-Mogul shall not have recourse to any assets of the Trust other than the Retained Stock to satisfy the Trust's obligations under the Trust Note. On the Effective Date, the Trust shall also deliver to Reorganized Federal-Mogul (i) a stock pledge agreement in form and substance satisfactory to Reorganized Federal-Mogul evidencing the Trust's pledge of the Retained Stock to secure repayment of the Trust Note and (ii) stock powers duly executed in blank or other instruments of transfer necessary for Reorganized Federal-Mogul to sell the Retained Stock in the event that the obligations under the Trust Note are being satisfied by Reorganized Federal-Mogul retaining the Retained Stock as contemplated in Section 8.22.4.3(b) of the Plan.

      **(d)**    If the Call is exercised subsequent to the Effective Date, Thornwood shall pay the entire $140,000,000 amount of the Trust Note to Reorganized Federal-Mogul on behalf of the Trust, from the $375,000,000 cash payment contemplated by section 8.3.6 of the Plan to be paid to the Trust as a result of the exercise of the Call. Payment of the $140,000,000 by Thornwood directly to Reorganized Federal-Mogul shall be in full and complete satisfaction of the Trust's obligations under the Trust Note, and shall reduce dollar-for-dollar the amount that Thornwood shall pay to the Trust as a result of the exercise of the Call. Upon payment of the $140,000,000 by Thornwood to Reorganized Federal-Mogul, Reorganized Federal-Mogul shall deliver the Retained Stock to Thornwood.

      **8.22.4.3.**    **If Call Expires.** If the Call expires without being exercised, then, on the first day following the expiry of the Call (*i.e.*, the sixty-first (61st) day after the Effective Date):

      **(a)**    Thornwood shall make a loan of $100,000,000 to the Trust as set forth in Section 8.3.6(c) of the Plan, which loan shall be secured by a first lien upon all the Reorganized Federal-Mogul Class B Common Stock held by the Trust at that time (which shall not include the Retained Stock); and

      **(b)**    the Trust shall either repay the entire $140,000,000 principal amount in Cash to Reorganized Federal-Mogul, or, if the Trust does not make the foregoing payment on the sixty-first (61st) day after the Effective Date, then Reorganized Federal-Mogul shall automatically, and without any further notice or action, have full and complete ownership of the Retained Stock, and any right, title and interest of the Trust in the Retained Stock shall be deemed completely cancelled and all of the Trust's obligations under the Trust Note shall be deemed satisfied in full. In the event that Reorganized Federal-Mogul has full and complete ownership of all or part of the Retained Stock, Reorganized Federal-Mogul shall immediately be entitled to sell such Retained Stock.

      **8.22.4.4.**    **If Dates do not Occur on a Business Day.** If any of the dates set forth in Section 8.22.4 of the Plan fall on a day that is not a Business Day, the obligations that are due on such day shall be extended until the next Business Day thereafter.

**8.22.5.    Trust Bound by Plan B Settlement Agreement.**  On the Effective Date, provided that the Plan B Settlement Agreement has not been earlier terminated in accordance with its terms, the Trust will be bound by the Plan B Settlement Agreement without any need for any further action by the Trust.

**8.22.6.    Modifications to Plan B Settlement Agreement.**  No provision of the Plan B Settlement Agreement may be modified, supplemented, changed or amended (including, without limitation, by amendment of the Plan) except as provided in the Plan B Settlement Agreement.

**8.22.7.    Insurance Matters Relating to Implementation of Plan B Settlement.**

**8.22.7.1.    Non-Recovery of Plan B Settlement Amount from Insurers.**  None of the Debtors, the Trust, the Asbestos Claimants Committee, and/or the Future Claimants Representative shall seek in any forum or proceeding to recover the Plan B Settlement Amount, or any portion thereof, from any issuer(s) of any Pneumo Asbestos Insurance Policies (including, without limitation, any of Columbia Casualty Company, Continental Casualty Company and The Continental Insurance Company, both in its individual capacity as well as the successor to certain interests of Harbor Insurance Company).

**8.22.7.2.    Pneumo Asbestos Insurance Policies Under Plan B Settlement.**  In the event Articles II and III of the Plan B Settlement Agreement become effective pursuant to Section 5.01 of the Plan B Settlement Agreement, none of the Debtors shall assert any rights to recover any amounts under any Pneumo Asbestos Insurance Policies.

**8.23.    Effectiveness of Addendum.**

**8.23.1.    Implementation of Addendum and Plan A Settlement.**

**8.23.1.1.**    The Addendum and the Plan A Settlement contained therein will be implemented unless Articles II and III of the Plan B Settlement Agreement become effective pursuant to Section 5.01 of the Plan B Settlement Agreement prior to the Date of Finality.  If the Addendum and the Plan A Settlement are implemented, the Addendum and the exhibits thereto shall be part of the Plan and the Addendum and the exhibits thereto shall be Plan Documents.

**8.23.1.2.**    If Articles II and III of the Plan B Settlement Agreement become effective pursuant to Section 5.01 of the Plan B Settlement Agreement prior to the Date of Finality, the Addendum shall have no further force and effect except that the provisions of Section 2.4.2 of the Addendum (and all definitions used therein) and any agreements entered into to give effect thereto or in connection therewith, shall continue to have full force and effect and shall be enforceable in accordance with their terms.  In such event, except for the provisions and agreements described in the first sentence of this Section 8.23.1.2, the Addendum and the exhibits thereto shall not constitute a part of the Plan and the Addendum and the exhibits thereto shall not be Plan Documents.

140

    **8.23.2.**    **Addendum Controls with Respect to Plan A Settlement.** In the event the Addendum is implemented as described in Section 8.23.1 of the Plan, to the extent there is a conflict between the Addendum and any provision of the Plan with respect to the Plan A Settlement, the Addendum shall control.

    **8.24.**    **Plan Support Agreement.** The Other Cooper Claims shall be subject to the terms of the Plan Support Agreement. In particular, pursuant to the Plan Support Agreement, Cooper LLC and Cooper Industries, Ltd. have waived any rights to any Distributions on account of any of the Other Cooper Claims and any right to vote with respect thereto.

    **8.25.**    **Implementation of Owens-Illinois Settlement.** The Plan incorporates by reference the terms of the Owens-Illinois Settlement Agreement, including, without limitation, (i) the obligation of Federal-Mogul to pay the Owens-Illinois Settlement Amount to Owens-Illinois, Inc. on the Effective Date and (ii) the release on the Effective Date by Owens-Illinois of any and all claims against all of the Debtors and their non-Debtor Affiliates, save those proofs of claim reflecting contribution and indemnity claims arising from asbestos liabilities that are specifically set forth in the Owens-Illinois Settlement Agreement, which, for the avoidance of doubt, are classified as Indirect Asbestos Personal Injury Claims and the liability for which shall be transferred to the Trust on the Effective Date in accordance with Section 4.2.1 of the Plan.

    **8.26.**    **Implementation of Settlement Agreement with Certain Asbestos Property Damage Claimants.** Pursuant to Section 1123(b) of the Bankruptcy Code, that certain Settlement Agreement with the holders of Asbestos Property Damage Claims attached to the Plan as Exhibit 8.26 shall be implemented according to its terms pursuant to the Plan.

    **8.27.**    **Implementation of MagneTek Settlement Agreement.** The Plan will implement that certain Settlement Agreement among (i) Federal-Mogul and FMP, (ii) MagneTek, Inc., MagneTek Controls, Inc., and MagneTek National Electric Coil, Inc., (iii) the Asbestos Claimants Committee, and (iv) the Future Claimants Representative dated as of May 24, 2007.

    **8.28.**    **Dismissal of CNA Adversary Proceeding.** That certain adversary proceeding captioned Columbia Casualty Company, Continental Casualty Company and The Continental Insurance Company v. Federal-Mogul Corporation, Federal-Mogul Products, Inc., The Official Committee of Asbestos Claimants, Eric D. Green, Future Claimants' Representative, Pneumo Abex, LLC, PepsiAmericas, Inc., and Cooper Industries, LLC, Adv. Pro. No. 06-50609 (the *"CNA Adversary Proceeding"*), shall be deemed dismissed without prejudice as of the Effective Date. Neither the CNA Adversary Proceeding nor any of the arguments made or actions taken by any of the parties to the CNA Adversary Proceeding in the CNA Adversary Proceeding shall in any way operate to, or have the effect of, impairing any of the parties' legal, equitable or contractual rights, if any, in any respect.

    **8.29.**    **Implementation of CIP Agreement and Controlling Effect Thereof.** The CIP Agreement shall be implemented as part of the Plan, and the CIP Agreement shall govern the obligations of the Reorganized Debtors, the Trust, and the Insurers and Excess Insurers (as the terms Insurers and Excess Insurers are defined in the CIP Agreement) with respect to the matters covered by the CIP Agreement. Notwithstanding anything to the contrary in the Plan, any of the

Plan Documents (including the Trust Documents), or the Confirmation Order (including any provisions that purport to be preemptory or supervening and specifically including, without limitation, sections 4.3, 4.11, 4.14, 4.15, 8.7, 8.8.3, 8.9, 8.19, 9.6 (only as section 9.6 applies to the Reorganized Debtors), 10.6, 11.5, 11.9.1, and 11.23 of the Plan):

(a)     The Reorganized Debtors and the Trust shall be bound by the CIP Agreement and their obligations thereunder.

(b)     Fel-Pro Claims and Vellumoid Claims shall be handled under the CIP Agreement and Section 5.3 of the Asbestos Personal Injury Trust Distribution Procedures. In the event of any conflict or discrepancy between, on the one hand, the CIP Agreement and, on the other hand, the Plan, the Confirmation Order, or any of the Plan Documents (including, without limitation, the Trust Agreement, the Asbestos Personal Injury Trust Distribution Procedures, or any provisions that purport to be preemptory or supervening) concerning the handling and disposition of Fel-Pro Claims and Vellumoid Claims, the CIP Agreement shall govern.

(c)     Nothing in the Plan, any of the Plan Documents (including, without limitation, the Trust Agreement, the Asbestos Personal Injury Trust Distribution Procedures, or any provisions that purport to be preemptory or supervening), or the Confirmation Order shall in any way operate to, or have the effect of, impairing, limiting, diminishing, or otherwise materially and adversely affecting the rights and obligations of the Insurers and the Excess Insurers under the CIP Agreement.

(d)     Any future modifications to the Plan or Plan Documents (including without limitation any modifications to the Trust Agreement or the Asbestos Personal Injury Trust Distribution Procedures) shall not contain provisions that materially and adversely affect the Insurers' or Excess Insurers' rights under the CIP Agreement and Sections 5.3(b) or 8.1 of the Asbestos Personal Injury Trust Distribution Procedures shall not be amended without the prior express written consent of the Lead Insurer (as that term is defined in the CIP Agreement).

(e)     Nothing in Section 1.1.178.5 of the Plan shall limit the effect or scope of Section 2.1(b) of the CIP Agreement.

(f)     Nothing in this Section 8.29 shall affect, supersede or amend Section 10.4.2 of the Plan, which shall remain in full force and effect.

## ARTICLE IX
## INJUNCTIONS, RELEASES AND DISCHARGE

### 9.1.    Discharge

#### 9.1.1.     Discharge of Claims and Termination of Interests

(a)     As of the Effective Date, except as provided in the Plan or the Confirmation Order, the distributions and rights afforded under this Plan and the treatment of Claims and Equity Interests under this Plan shall be in exchange for, and in complete discharge of, all Claims and satisfaction and termination of all Equity Interests, including any interest accrued on Claims from and after the Petition Date. Accordingly, except as otherwise provided

in the Plan or the Confirmation Order, Confirmation of the Plan shall, as of the Effective Date, (i) discharge the Debtors from all Claims or other debts that arose before the Effective Date, and all debts of the kind specified in Sections 502(g) or 502(i) of the Bankruptcy Code, whether or not (x) a proof of claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code, (y) a Claim based on such debt is Allowed pursuant to Section 502 of the Bankruptcy Code (or is otherwise resolved), or (z) the holder of a Claim based on such debt has accepted the Plan; and (ii) satisfy, terminate or cancel all Equity Interests and other rights of equity security holders in the Debtors except as otherwise provided in the Plan.

(b)     As of the Effective Date, except as provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, or their respective successors or property, any other or further Claims, Demands, debts, rights, causes of action, liabilities or Equity Interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims and other debts and liabilities of the Debtors, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent such judgment is related to a discharged Claim.

### 9.1.2.     Discharge Injunction

(a)     Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold, have held, or may hold a Claim, Demand or other debt or liability that is discharged, or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims, debts or liabilities, or terminated Equity Interests or rights: (i) commencing or continuing any action or other proceeding against the Debtors, the Reorganized Debtors, the Trust or their respective property; (ii) enforcing, attaching, collecting or recovering any judgment, award, decree or order against the Debtors, the Reorganized Debtors, the Trust or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtors, the Reorganized Debtors, the Trust or their respective property; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due the Debtors, the Reorganized Debtors, the Trust or their respective property; and (v) commencing or continuing any judicial or administrative proceeding, in any forum, that does not comply with or is inconsistent with the provisions of the Plan.

(b)     Except as provided in the Plan or the Confirmation Order, as of the Effective Date all Persons that hold, have held, or may hold a Claim, Demand, or other debt, right, cause of action or liability that is released pursuant to the provisions of the Plan are permanently enjoined from taking any of the following actions on account of or based upon such released Claims, Demands, debts, rights, causes of action or liabilities: (i) commencing or continuing any action or other proceeding against the Released Parties or their respective property; (ii) enforcing, attaching, collecting or recovering any judgment, award, decree or order against the Released Parties or their respective property; (iii) creating, perfecting or enforcing

143

any lien or encumbrance against the Released Parties or their respective property; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due the Released Parties or against their respective property; and (v) commencing or continuing any judicial or administrative proceeding, in any forum, that does not comply with or is inconsistent with the provisions of the Plan.

### 9.2.   Releases

**9.2.1.    Releases by Debtors and Estates.**  Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date the Reorganized Debtors on their own behalf and as representatives of their respective estates, release unconditionally, and are hereby deemed to release unconditionally, each and all of (i) the Debtors' and their non-Debtor Affiliates' officers and directors who were serving in such capacity on or after the Petition Date, (ii) the attorneys, accountants, investment bankers, restructuring consultants and financial advisors of each of the Debtors, including Rothschild Inc. (together with its officers, directors and employees who served in such capacity during the term of its engagement by the Debtors) (iii) the holders of Noteholder Claims, the holders of Bank Claims, the Administrative Agent, and the Sureties, and their respective attorneys, accountants, investment bankers and advisers of and from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, omission, transaction, event or other occurrence taking place before the Petition Date in connection with the Debtors or any of them, or their respective property.  The releases contained in this Section shall not apply to or otherwise affect the obligations of any of Debtors' officers or directors to repay loans or advances of money or other property owed to the Debtors or their Estates.

**9.2.2.    Releases by Holders of Claims and Interests.**  Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date each holder of a Claim or Interest that has voted to accept the Plan, shall be deemed to have unconditionally released each and all of (i) the non-Debtor Affiliates, (ii) the Debtors' and their non-Debtor Affiliates' officers and directors who were serving in such capacity on or after the Petition Date, (iii) the attorneys, accountants, investment bankers, restructuring consultants and financial advisors of each of the Debtors (but specifically excluding (a) Rothschild Inc. and (b) Gilbert Randolph LLP; provided, however, that Gilbert Randolph LLP shall not be excluded from the scope of the releases in this Section 9.2.2 to the extent that any and all issues related to the contested matter involving that certain Motion to Disqualify Gilbert, Heintz & Randolph as Special Insurance Counsel to the Debtors (Docket No. 10123, filed July 24, 2006) are resolved in favor of Gilbert Randolph LLP pursuant to a Final Order) and (iv) the holders of Noteholder Claims, the holders of Bank Claims, the Administrative Agent, and the Sureties and their respective successors, attorneys, accountants, investment bankers and advisers of and from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, omission, transaction, event or other occurrence taking place before the Petition Date in connection with

the Debtors or any of them, or their respective property; provided, however, that each holder of a Claim or Equity Interest that has voted on the Plan may elect, by checking the appropriate box on its Ballot, not to grant the releases set forth in this Section 9.2.2.

**9.3.** *The Supplemental Injunction, The Third Party Injunction and The Asbestos Insurance Entity Injunction.* In order to supplement the injunctive effect of the Discharge Injunction, and pursuant to Sections 524 and 105(a) of the Bankruptcy Code, the Confirmation Order shall provide for the following injunctions to take effect as of the Effective Date.

### 9.3.1. *Supplemental Injunction*

(a) *Terms. In order to preserve and promote the settlements contemplated by and provided for in the Plan, and to supplement, where necessary, the injunctive effect of the discharge as provided in Sections 1141 and 524 of the Bankruptcy Code and as described in this Article, except as otherwise provided in the Plan, all Entities which have held or asserted, which hold or assert or which may hold or assert any claim, demand or cause of action (other than a Demand) against the Released Parties (or any of them) based upon, attributable to, or arising out of any Claim against or Equity Interest in any of the Debtors, whenever and wherever arising or asserted, whether in the U.S., the U.K. or anywhere else in the world, whether sounding in tort, contract, warranty or any other theory of law, equity or admiralty, shall be permanently stayed, restrained and enjoined from taking any action against the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving payments or recovery with respect to any such claim, demand or cause of action arising prior to the Confirmation Date, including, but not limited to:*

(i) *commencing or continuing in any manner any action or other proceeding of any kind with respect to any such claim, demand or cause of action against any of the Released Parties, or against the property of any Released Party;*

(ii) *enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or against the property of any Released Party with respect to any such claim, demand or cause of action;*

(iii) *creating, perfecting or enforcing any Lien of any kind against any Released Party or the property of any Released Party with respect to any such claim, demand or cause of action;*

(iv) *except as otherwise provided in the Plan, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due any Released Party or against the property of any Released Party with respect to any such claim, demand or cause of action; and*

(v) *taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan or the Plan Documents relating to such claim, demand or cause of action.*

(b)     *Bankruptcy Rule 3016 Compliance.  The Plan Proponents' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.*

### 9.3.2.     *Third Party Injunction*

(a)     *Terms.  In order to preserve and promote the settlements contemplated by and provided for in the Plan and agreements previously or concurrently approved by the Bankruptcy Court, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under Section 524(g) of the Bankruptcy Code, all Entities which have held or asserted, which hold or assert or which may in the future hold or assert any claim, demand or cause of action (including, but not limited to, any Asbestos Personal Injury Claim or Demand, or any claim or demand for or respecting any Trust Expense) against the Protected Parties (or any of them) based upon, attributable to, or arising out of any Asbestos Personal Injury Claim or Demand, whenever and wherever arising or asserted, whether in the U.S., the U.K. or anywhere else in the world, whether sounding in tort, contract, warranty or any other theory of law, equity or admiralty (a "Third Party Claim"), shall be permanently stayed, restrained and enjoined, from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments or recovery with respect to any such Third Party Claim, including, but not limited to:*

(i)     *commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Third Party Claim against any Protected Party or against the property of any Protected Party with respect to any such Third Party Claim;*

(ii)     *enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any Protected Party or against the property of any Protected Party with respect to any such Third Party Claim;*

(iii)     *creating, perfecting or enforcing any Lien of any kind against any Protected Party or the property of any Protected Party on the basis of such Third Party Claim;*

(iv)     *commencing any action or other proceeding of any kind or enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order, with respect to a Third Party Claim against a Protected Party that pursuant to the Plan or after the Effective Date makes a loan to any of the Released Parties, or challenging, upsetting or impairing any Lien granted in connection with such loan by reason of any such Third Party Claim;*

(v)     *except as otherwise provided in the Plan, asserting, implementing or effectuating any setoff, right of subrogation or contribution or recoupment of any kind against any obligation due any Protected Party or against the property of any Protected Party with respect to any such Third Party Claim; and*

(vi)    *taking any act relating to such Third Party Claim in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Plan Documents or the Trust Documents.*

(b)    *Reservations.  Notwithstanding anything to the contrary in Section 9.3.2(a) above, this Third Party Injunction shall not impair:*

(i)    *the rights of holders of Asbestos Personal Injury Claims to assert such Asbestos Personal Injury Claims or Trust Claims solely against the Trust or the Trust Assets in accordance with the Asbestos Personal Injury Trust Distribution Procedures;*

(ii)    *the rights of the Trust or the U.K. Asbestos Trustee on behalf of holders of Asbestos Personal Injury Claims to assert such Asbestos Personal Injury Claims solely against Hercules-Protected Entities in accordance with Article IV of the Plan;*

(iii)    *the rights of Entities to assert any Claim, debt, obligation or liability for payment of Trust Expenses solely against the Trust or the Trust Assets;*

(iv)    *the rights of the Trust or the Reorganized Debtors to prosecute any Asbestos Insurance Action or any similar claim, cause of action or right of Reorganized T&N against Curzon or of the Trust against the EL Insurers;*

(v)    *the rights of any Entity to assert an Asbestos Personal Injury Claim against a non-Debtor Affiliate where such Claim is based upon exposure to asbestos or asbestos-containing products resulting solely from the acts, conduct or omissions of such non-Debtor Affiliate;*

(vi)    *the rights of Entities to pursue or assert any claim, demand, or cause of action based upon, attributable to, or arising out of any Pneumo Asbestos Claims against any insurer under a Pneumo Asbestos Insurance Policy; or*

(vii)    *the rights of any of the Pneumo Parties to enforce the provisions of the Plan and the Plan Documents.*

(c)    *Bankruptcy Rule 3016 Compliance.  The Plan Proponents' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.*

(d)    *If a non-Settling Asbestos Insurance Company asserts that it has rights of contribution, indemnity, reimbursement, subrogation or other similar claims (collectively, "Contribution Claims") against a Settling Asbestos Insurance Company, (i) such Contribution Claims may be asserted as a defense or counterclaim against the Trust or the Reorganized Debtors (as applicable) in any Asbestos Insurance Action involving such non-Settling Asbestos Insurance Company, and the Trust or the Reorganized Debtors (as applicable) may assert the legal or equitable rights, if any, of the Settling Asbestos Insurance Company, and*

147

*(ii) to the extent such Contribution Claims are determined to be valid, the liability (if any) of such non-Settling Asbestos Insurance Company to the Trust or the Reorganized Debtors (as applicable) shall be reduced by the amount of such Contribution Claims.*

### 9.3.3.  *Asbestos Insurance Entity Injunction*

(a)  *Purpose.  In order to protect the Trust and to preserve the Trust Assets, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under Section 105(a) of the Bankruptcy Code, the Asbestos Insurance Entity Injunction is issued pursuant to the Plan.*

(b)  *Terms.  Subject to the provisions of 9.3.3.(a) of this Plan, all Entities (excluding, however, the Trust, the Asbestos Insurance Companies and the Reorganized Debtors to the extent they are permitted or required to pursue claims relating to the Hercules Policy, any EL Policy, any Asbestos Insurance Actions and/or the Asbestos Insurance Action Recoveries) that have held or asserted, that hold or assert, or that may in the future hold or assert any claim, demand or cause of action (including any Asbestos Personal Injury Claim or Demand or any claim or demand for or respecting any Trust Expense) against any Asbestos Insurance Company based upon, attributable to, arising out of, or in any way connected with any Asbestos Personal Injury Claim or Demand, whenever and wherever arising or asserted, whether in the U.S., the U.K. or anywhere else in the world, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such claim, demand, or cause of action including, without limitation:*

(i)  *commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such claim, demand, or cause of action against any Asbestos Insurance Company, or against the property of any Asbestos Insurance Company, with respect to any such claim, demand, or cause of action;*

(ii)  *enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Insurance Company, or against the property of any Asbestos Insurance Company, with respect to any such claim, demand, or cause of action;*

(iii)  *creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance against any Asbestos Insurance Company, or the property of any Asbestos Insurance Company, with respect to any such claim, demand, or cause of action; and*

(iv)  *except as otherwise specifically provided in this Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Asbestos Insurance*

*Company, or against the property of any Asbestos Insurance Company, with respect to any such claim, demand or cause of action;*

*provided, however, that (a) the Asbestos Insurance Entity Injunction shall not impair in any way any actions brought by the Trust and/or the Reorganized Debtors against any Asbestos Insurance Company; (b) the Trust shall have the sole and exclusive authority at any time to file a motion, upon express notice to each affected Asbestos Insurance Company, asking the District Court to terminate, or reduce or limit the scope of, the Asbestos Insurance Entity Injunction with respect to any Asbestos Insurance Company (subject to the proviso that each affected Asbestos Insurance Company shall retain all rights and defenses with respect to Claims asserted against it as a result of any such termination, reduction, or limitation of the Asbestos Insurance Entity Injunction); and (c) the Asbestos Insurance Entity Injunction is not issued for the benefit of any Asbestos Insurance Company, and no Asbestos Insurance Company is a third-party beneficiary of the Asbestos Insurance Entity Injunction.*

(c)     *Reservations.  Notwithstanding anything to the contrary above, this Asbestos Insurance Entity Injunction shall not enjoin:*

(i)     *the rights of Entities to the treatment accorded them under this Plan, as applicable, including the rights of holders of Asbestos Personal Injury Claims to assert such Claims, as applicable, in accordance with the Asbestos Personal Injury Trust Distribution Procedures;*

(ii)     *the rights of Entities to assert any claim, debt, obligation, cause of action or liability for payment of Trust Expenses against the Trust;*

(iii)     *the rights of the Trust, and the Reorganized Debtors (to the extent permitted or required under this Plan) to prosecute any action based on or arising from the Asbestos Insurance Policies;*

(iv)     *the rights of the Trust, and the Reorganized Debtors to assert any claim, debt, obligation, cause of action or liability for payment against an Asbestos Insurance Company based on or arising from the Asbestos Insurance Policies;*

(v)     *the rights of any Asbestos Insurance Company to assert any claim, debt, obligation, cause of action or liability for payment against any other Asbestos Insurance Company that is not a Settling Asbestos Insurance Company; and*

(vi)     *the rights of Entities to pursue or assert any claim, demand, or cause of action based upon, attributable to, or arising out of any Pneumo Asbestos Claims against any insurer under a Pneumo Asbestos Insurance Policy.*

9.4.     **Reservation Of Rights**.  Notwithstanding any other provision of the Plan to the contrary, the satisfaction, release and discharge and the Injunctions set forth in this Article IX, shall not be deemed or construed to satisfy, discharge, release or enjoin claims by the Trust, the Reorganized Debtors, or (subject to Article IV) any other Entity, as the case may be, against (a) the Trust for payment of Allowed Asbestos Personal Injury Claims or Trust Claims in accordance with the Asbestos Personal Injury Trust Distribution Procedures, (b) the Trust for the

149

payment of Trust Expenses, (c) any Asbestos Insurance Company that has not performed under an Asbestos Insurance Policy or an Asbestos Insurance Settlement Agreement, (d) Curzon under the Hercules Policy or any settlement agreement with Curzon relating to any Asbestos Personal Injury Claim, (e) the EL Insurers under any EL Asbestos Insurance or any settlement agreement with the EL Insurers relating to any Asbestos Personal Injury Claim, (f) any of the Reorganized Debtors on account of the Pneumo Excluded Claims, or (g) the issuer of a supersedeas bond or other assurance of payment with respect to an Allowed Bonded Asbestos Personal Injury Claim that has not performed thereunder. Nothing in this Section 9.4 is intended or shall be construed to limit the assertion, applicability, or effect of any Asbestos Insurance Coverage Defense.

   **9.5.   Disallowed Claims And Disallowed Equity Interests.** On and after the Effective Date, the Debtors and the Reorganized Debtors shall be fully and finally discharged of any and all liability or obligation on a disallowed Claim or a disallowed Equity Interest, and any Order disallowing a Claim or an Equity Interest which is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such Order pursuant to Section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date. The Confirmation Order, except as otherwise provided herein, shall constitute an Order: (a) in relation to each U.S. Debtor, disallowing all Claims (other than Asbestos Personal Injury Claims) and Equity Interests to the extent such Claims and Equity Interests are not allowable under any provision of Section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Equity Interests, and Claims for unmatured interest and (b) in relation to each U.S. Debtor, disallowing or subordinating to all other Claims, as the case may be, any Claims for penalties, punitive damages or any other damages not constituting compensatory damages.

   **9.6.   Exculpation.** None of the Debtors, the Reorganized Debtors, the members of the Unsecured Creditors Committee, the members of the Asbestos Claimants Committee, the Future Claimants Representative, the members of the Equity Committee, the Collateral Trustee, the holders of Noteholder Claims, the holders of Bank Claims, the Administrative Agent, and the Sureties, nor any of their respective successors, officers, directors, employees, members, agents, attorneys, accountants, investment bankers, financial advisors or restructuring professionals, including Rothschild Inc. (together with its officers, directors and employees who served in such capacity during the term of its engagement by the Debtors), nor any other professional Person employed by any of them, shall have or incur any liability to any Person or Entity for any act or omission in connection with, relating to, or arising out of the Reorganization Cases, the administration proceedings of the U.K. Debtors, the negotiation of the Plan or the CVAs, pursuit of Confirmation of the Plan or approval of the CVAs, the administration, consummation and implementation of the Plan and CVAs or the property to be distributed under the Plan or the CVAs, the Disclosure Statement, the Plan Documents, the releases and Injunctions, or the management or operation of the Debtors (except for any liability that results primarily from such Person's or Entity's gross negligence, bad faith or willful misconduct); provided, however, that (i) with respect to officers and directors of the Debtors, this exculpation provision shall apply only to officers or directors who were serving in such capacity on or after the Petition Date; (ii) this exculpation provision shall not apply to (a) Gilbert Randolph LLP (provided, however, that Gilbert Randolph LLP shall not be excluded from the scope of the exculpation provided in this Section 9.6 to the extent that any and all issues related to the contested matter involving that certain Motion to Disqualify Gilbert, Heintz & Randolph as Special Insurance Counsel to the

Debtors (Docket No. 10123, filed July 24, 2006) are resolved in favor of Gilbert Randolph LLP pursuant to a Final Order) and (b) Tersigni Consulting, pending the outcome of the review of Tersigni Consulting's professional fees and expenses in the Reorganization Cases by the United States Trustee and the Office of the United States Attorney for the District of Delaware); and (iii) this exculpation provision shall not apply to Asbestos Insurer Coverage Defenses. In all respects each and all of such Persons, firms and Entities shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Reorganization Cases, the Plan, the CVAs, the administration proceedings of the U.K. Debtors, and the administration of each of them.

## ARTICLE X
## MATTERS INCIDENT TO PLAN CONFIRMATION

**10.1.   No Liability For Tax Claims**.  Unless a taxing authority in the United States has asserted a Claim against the Debtors prior to the bar date established therefor, no Claim of such authority shall be Allowed against the Debtors or the Reorganized Debtors for taxes, penalties, interest, additions to tax or other charges arising out of the failure, if any, of the Debtors, or the non-Debtor Affiliates, or any other Entity to have paid tax or to have filed any tax return (including, but not limited to, any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

**10.2.   No Successor Liability**.  Except as otherwise expressly provided in the Plan and the CIP Agreement, the Commutation Agreement, and any other agreements between the Debtors and The Travelers Indemnity Company and Travelers Casualty and Surety Company, f/k/a The Aetna Casualty and Surety Company ("*Travelers*") resolving issues relating to Asbestos Insurance Policies issued or subscribed by Travelers (collectively with the CIP Agreement and the Commutation Agreement, the "*Travelers Agreements*"), Reorganized Federal-Mogul and the other Reorganized Debtors do not, pursuant to the Plan or otherwise, assume, agree to perform, pay or indemnify any Entity, or otherwise have any responsibility for any liabilities or obligations of the Debtors relating to or arising out of the operations of or assets of the Debtors, whether arising prior to, on or after the Effective Date. Except as provided in Article IV of the Plan, neither the Plan Proponents, Reorganized Federal-Mogul, the other Reorganized Debtors nor the Trust is, or shall be deemed to be, a successor to any of the Debtors by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character; provided, however, that Reorganized Federal-Mogul, the other Reorganized Debtors and the Trust shall assume and remain liable for their respective obligations specified in the Plan, the Travelers Agreements, and the Confirmation Order.

**10.3.   Asbestos Insurance Actions and Asbestos In-Place Insurance Coverage**.  Any Asbestos In-Place Insurance Coverage, Asbestos Insurance Action, or the claims and causes of action asserted or to be asserted therein, shall be preserved for the benefit of the Trust, for prosecution either by Reorganized Federal-Mogul, the other applicable Reorganized Debtors, or the Trustees (as mutually agreed by such parties) subsequent to Confirmation of the Plan and in accordance with the Trust Agreement.  As of the date subsequent to the Effective Date on which the Trustees confirm in writing to the Reorganized Debtors that the Trust is in a position to assume such responsibility, the Asbestos In-Place Insurance Coverage and the Asbestos Insurance Actions, along with the rights and obligations of the Debtors and the Reorganized

Debtors with respect to Asbestos Insurance Policies and claims thereunder, to the extent that such Policies, Asbestos In-Place Insurance Coverage, and claims relate to Asbestos Personal Injury Claims but not as to any other claims covered thereby and subject to the assignability without prejudice of such claims and Policies, shall be assigned to and vested in the Trust as the representative of the Debtors' Estates, each being appointed by the Bankruptcy Court in accordance with Section 1123(b)(3) of the Bankruptcy Code without any further action by the Debtors or Reorganized Debtors, the Trust or the Bankruptcy Court. Such Asbestos In-Place Insurance Coverage and Asbestos Insurance Actions shall be so vested free and clear of all Liens, security interests and other Claims or causes of action, except for Asbestos Insurer Coverage Defenses as otherwise provided in the Plan. Until such time as the Asbestos In-Place Insurance Coverage and Asbestos Insurance Actions have become vested in the Trust, Reorganized Federal-Mogul and the other Reorganized Debtors, as the case may be, shall be entitled to compromise or settle any Asbestos Insurance Action or claims relating to any Asbestos In-Place Insurance Coverage; provided, however, that any such compromise or settlement shall require the consent of the Future Claimants Representative and the Asbestos Claimants Committee or the Trust Advisory Committee, as applicable, and the approval of the Bankruptcy Court. Upon vesting in the Trust, the prosecution of the Asbestos Insurance Actions shall be governed by the Trust Documents. Notwithstanding anything to the contrary contained herein, the Trust shall not compromise or resolve insurance coverage under any Asbestos Insurance Policy except with respect to Asbestos Personal Injury Claims. From the time that the Asbestos In-Place Insurance Coverage and Asbestos Insurance Actions are vested in the Trust, the Trust shall be entitled, in its sole and complete discretion, to move the District Court to extend the Supplemental Injunction, the Third Party Injunction, and/or the Asbestos Insurance Entity Injunction to any Asbestos Insurance Company that becomes a party to an Asbestos Insurance Settlement Agreement. Any extension of the Supplemental Injunction, the Third Party Injunction, and/or the Asbestos Insurance Entity Injunction shall be accomplished by amending and/or supplementing Exhibit 1.1.198 hereto to add the name of the Settling Asbestos Insurance Company and as required by the terms of the CIP Agreement, and by obtaining an order of the District Court.

### 10.4.   **Insurance Neutrality**.

      **10.4.1.**   The provisions of this Section 10.4.1 shall apply to all Entities (including, without limitation, all Asbestos Insurance Companies); provided, however, that with respect to Certain Underwriters at Lloyd's, London and Certain London Market Companies (collectively, *"London Market Insurers"*) and any Asbestos Insurance Policies subscribed by London Market Insurers (or any Asbestos Insurance Settlement Agreements applicable to such Asbestos Insurance Policies), the provisions of this Section 10.4.1 shall not be applicable, and the provisions of Section 10.4.2 shall be applicable.

      **10.4.1.1.**   Nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the Confirmation of the Plan shall limit the right of any Asbestos Insurance Company to assert any Asbestos Insurer Coverage Defense.

      **10.4.1.2.**   The Plan, the Plan Documents, the Confirmation Order, and the Bankruptcy Insurance Stipulation shall be binding on the Debtors, the Reorganized

Debtors, the Trust and the beneficiaries of the Trust. The obligations, if any, of the Trust to pay holders of Asbestos Personal Injury Claims and Demands shall be determined pursuant to the Plan and the Plan Documents. None of (I) the Bankruptcy Court's or District Court's approval of the Plan or the Plan Documents, (II) the Confirmation Order or any findings and conclusions entered with respect to Confirmation, nor (III) any estimation or valuation of Asbestos Personal Injury Claims, either individually or in the aggregate (including, without limitation, any agreement as to the valuation of Asbestos Personal Injury Claims) in the Reorganization Cases shall, with respect to any Asbestos Insurance Company, constitute a trial or hearing on the merits or an adjudication or judgment; or accelerate the obligations, if any, of any Asbestos Insurance Company under its Asbestos Insurance Policies; or be used as evidence in any forum to prove:

       (i)     that any of the Debtors, the Trust, or any Asbestos Insurance Company is liable for, or otherwise obligated to pay with respect to, any individual Asbestos Personal Injury Claim or Demand;

       (ii)    that the procedures established by the Plan, including the Asbestos Personal Injury Trust Distribution Procedures, for evaluating and paying Asbestos Personal Injury Claims and Demands are reasonable;

       (iii)   that the procedures established by the Plan, including the Asbestos Personal Injury Trust Distribution Procedures, for evaluating and paying Asbestos Personal Injury Claims and Demands are consistent with any procedures that were used to evaluate or settle Asbestos Personal Injury Claims against the Debtors before the Petition Date;

       (iv)   that the settlement of, or the value assigned to, any individual Asbestos Personal Injury Claim pursuant to the Asbestos Personal Injury Trust Distribution Procedures was reasonable and/or otherwise appropriate;

       (v)    that any of the Asbestos Insurance Companies participated in and/or consented to the negotiation of the Plan or any of the Plan Documents;

       (vi)   that any of the Debtors or the Trust has suffered an insured loss with respect to any Asbestos Personal Injury Claim or Demand; or

       (vii)   as to (A) the liability of the Debtors or the Trust for Asbestos Personal Injury Claims or Demands, whether such Claims or Demands are considered individually or on an aggregate basis; or (B) the value of such Asbestos Personal Injury Claims or Demands, individually or in the aggregate.

       **10.4.1.3.**    Nothing in the Plan or the Plan Documents shall affect or limit, or be construed as affecting or limiting, the protection afforded to any Settling Asbestos Insurance Company by the Supplemental Injunction, the Third Party Injunction, and/or the Asbestos Insurance Entity Injunction.

       **10.4.1.4.**    Nothing in this Section 10.4 is intended or shall be construed to preclude otherwise applicable principles of res judicata or collateral estoppel from being applied against any Asbestos Insurance Company with respect to any issue that is actually

litigated by such Asbestos Insurance Company as part of its objections, if any, to Confirmation of the Plan or as part of any contested matter or adversary proceeding filed by such Asbestos Insurance Company in conjunction with or related to Confirmation of the Plan. Plan objections that are withdrawn prior to the conclusion of the Confirmation Hearing shall be deemed not to have been actually litigated.

       **10.4.1.5.**    Nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the Confirmation or consummation of the Plan shall limit the right, if any, of (i) any Asbestos Insurance Company, in any Asbestos Insurance Action, to assert any Asbestos Insurer Coverage Defense, including by presenting evidence and/or argument with respect to any of the matters specified in clauses (i) through (vii) of Section 10.4.1.2 of the Plan or (ii) any other party in any such Asbestos Insurance Action to assert any appropriate position. Except as provided in Section 10.4.1.4 above, none of the matters specified in clauses (i) through (vii) of Section 10.4.1.2 of the Plan shall have any res judicata or collateral estoppel effect against any Asbestos Insurance Company.

       **10.4.2.**    **Insurance Neutrality Provisions Applicable Solely to London Market Insurers.** This Section 10.4.2 shall apply solely with respect to London Market Insurers and any Asbestos Insurance Policies subscribed by London Market Insurers (or Asbestos Insurance Settlement Agreements relating to such Asbestos Insurance Policies).

       **10.4.2.1.**    Except as provided in Section 10.4.2.2, notwithstanding anything to the contrary in the Confirmation Order, the Plan or any of the Plan Documents, nothing in the Confirmation Order, the Plan or any of the Plan Documents (including any other provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing London Market Insurers' legal, equitable or contractual rights, if any, in any respect. The rights of London Market Insurers shall be determined under the Asbestos Insurance Policies or Asbestos Insurance Settlement Agreements.

       **10.4.2.2.**    Nothing in the Plan or the Plan Documents shall affect or limit, or be construed as affecting or limiting, the protection afforded to any Settling Asbestos Insurance Company by the Supplemental Injunction, the Third Party Injunction, and/or the Asbestos Insurance Entity Injunction.

       **10.4.2.3.**    Nothing in this Section 10.4.2 is intended or shall be construed to preclude otherwise applicable principles of res judicata or collateral estoppel from being applied against London Market Insurers with respect to any issue that is actually litigated by London Market Insurers as part of their objections, if any, to Confirmation of the Plan or as part of any contested matter or adversary proceeding filed by London Market Insurers in conjunction with or related to Confirmation of the Plan. Plan objections that are withdrawn prior to the conclusion of the Confirmation Hearing shall be deemed not to have been actually litigated. The Plan Proponents and London Market Insurers have agreed in a stipulation separate from this Plan (the *"London Market Insurers Stipulation"*) that the only issue London Market Insurers will litigate in connection with Confirmation of the Plan is whether, under the Bankruptcy Code as a matter of law, the assignment of any Asbestos Insurance Policies or other rights and obligations with respect to, arising under, or related to Asbestos Insurance Policies subscribed by London Market Insurers, is valid and enforceable against London Market Insurers

notwithstanding (i) anti-assignment provisions in or incorporated in the Asbestos Insurance Policies subscribed by London Market Insurers and (ii) applicable state law.

**10.5.   Supersedeas Bond Actions.**

**10.5.1.   Preserved Actions.** All Supersedeas Bond Actions and the rights and claims asserted or to be asserted therein shall be preserved and shall be prosecuted or defended, as the case may be, by the Reorganized Debtors subsequent to Confirmation of the Plan.

**10.5.2.   Assumption By The Trust.** As of the Effective Date, the Trust shall assume, and shall have exclusive liability for, any unsecured portion of Bonded Asbestos Personal Injury Claims remaining after crediting proceeds of any supersedeas bond or other payment assurances to which the holder of such Claim is determined by Final Order or agreement of the parties to be entitled. To the extent that the Reorganized Debtors successfully prosecute or defend against a Supersedeas Bond Action resulting in the discharge or release of the relevant supersedeas bond or other payment assurance provided in connection therewith, any such recoveries shall inure to the benefit of the Reorganized Debtors.

**10.5.3.   Reservation of Rights of Issuers and Insurers of Payment Assurances.** Notwithstanding anything to the contrary contained herein, nothing in the Plan shall be deemed to impair, prejudice, compromise or otherwise affect any defense or counterclaim asserted by any issuer or insurer of payment assurances issued on behalf of the Debtors, or any other defendant in the Supersedeas Bond Actions, to any claim of the Debtors, including, but not limited to, any defense based upon an asserted right of setoff or recoupment, or other defense under applicable non-bankruptcy law. Any right of setoff or recoupment shall be satisfied out of the assets in the possession of the sureties and/or insurers relating to such payment assurances and any claims or liabilities including, but not limited to, claims for premiums for bonds provided by any such issuers or insurers.

**10.5.4.   Compromising and Settling.** Reorganized Federal-Mogul and the other Reorganized Debtors shall be entitled to compromise or settle any Supersedeas Bond Actions; provided, however, that any such compromise or settlement shall require the consent of the Future Claimants Representative and the Asbestos Claimants Committee to the extent the compromise or settlement results in there being any unsecured portion of the Bonded Asbestos Personal Injury Claim after applying the proceeds of any supersedeas bond or other payment assurances.

**10.6.   Institution And Maintenance Of Legal And Other Proceedings.** As of the date subsequent to the Effective Date on which the Trustees confirm in writing to the Reorganized Debtors that the Trust is in a position to assume the responsibility, the Trust shall be empowered to initiate, prosecute, defend and resolve all legal actions and other proceedings related to any asset, liability or responsibility of the Trust, including Asbestos Insurance Actions, Indirect Asbestos Personal Injury Claims, or other Trust Causes of Action. The Trust shall be empowered to initiate, prosecute, defend and resolve all such actions in the name of Federal-Mogul, any other Debtor or any Reorganized Debtor if deemed necessary or appropriate by the Trust. The Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees and other charges incurred subsequent to the Effective Date

arising from or associated with any legal action or other proceeding which is the subject of this Section 10.6 and shall pay or reimburse all deductibles, retrospective premium adjustments or other charges (not constituting Indirect Asbestos Personal Injury Claims) which may arise from the receipt of any insurance proceeds by the Trust.

**10.7.** **Retention And Enforcement Of Trust Causes Of Action**. Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, except as otherwise provided in the Plan, including the Trust Documents, the Trust shall retain and have the exclusive right to enforce against any Entity any and all of the Trust Causes of Action, with the proceeds of the recoveries of any such actions to be deposited in the Trust; provided, however, that nothing herein shall alter, amend or modify the Injunctions, Releases, discharges or Supersedeas Bond Action provisions contained elsewhere in the Plan and Trust Documents.

**10.8.** **Sherrill Litigation**. Subject to the terms of any applicable settlement that may be approved by the Bankruptcy Court, nothing in the Plan limits, impairs, or creates any right, existing outside of bankruptcy, of Joseph Scott Sherrill or any class he may represent with respect to the matters set forth in Proof of Claim No. 7314 (the *"Sherrill Claim"*) to recover against any insurance coverage applicable to the Sherrill Claim.

## ARTICLE XI
## MISCELLANEOUS

**11.1.** **Jurisdiction**. Until the Reorganization Cases are closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including the jurisdiction necessary to ensure that the purposes and intent of the Plan are carried out. Except as otherwise provided in the Plan or the Trust Documents, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Equity Interests in the Debtors, and to adjudicate and enforce the Asbestos Insurance Actions, the Supersedeas Bond Actions, and all other causes of action which may exist on behalf of the Debtors; provided, however, that nothing herein shall prevent the CVA Supervisors and/or the U.K. Court from admitting or adjudicating claims under the CVAs. Nothing contained herein shall prevent the Reorganized Debtors or the Trust from taking such action as may be necessary in the enforcement of any Asbestos Insurance Action, Supersedeas Bond Action or other cause of action which the Debtors have or may have and which may not have been enforced or prosecuted by the Debtors, which actions or other causes of action shall survive Confirmation of the Plan and shall not be affected thereby except as specifically provided herein. Nothing contained herein shall prejudice or affect the sole and exclusive jurisdiction and power of the U.K. Court in relation to the conduct of the administration of any U.K. Debtor under the laws of the relevant part of the United Kingdom and in relation to the CVAs. Nothing contained herein concerning the retention of jurisdiction by the Bankruptcy Court shall be deemed to be a finding or conclusion that (i) the Bankruptcy Court in fact has jurisdiction with respect to any Asbestos Insurance Action, (ii) that any such jurisdiction is exclusive with respect to any Asbestos Insurance Action, or (iii) that abstention or dismissal of any Asbestos Insurance Action pending in the Bankruptcy Court or the District Court as an adversary proceeding, so that another court can hear and determine such Asbestos Insurance Action(s), is or is not advisable or warranted. Any court other than the Bankruptcy Court that has jurisdiction over any Asbestos Insurance Action shall have the right to exercise such jurisdiction.

**11.2.**   **General Retention.**  Following Confirmation of the Plan, the administration of the Reorganization Cases will continue until the Reorganization Cases are closed by a Final Order of the Bankruptcy Court.  The Bankruptcy Court shall also retain jurisdiction for the purpose of classification of any Claims and the re-examination of Claims which have been Allowed for purposes of voting, and the determination of such objections as may be filed with the Bankruptcy Court with respect to any Claims. The failure by the Plan Proponents to object to, or examine, any Claim for the purposes of voting, shall not be deemed a waiver of the rights of the Debtors, the Reorganized Debtors or the Trust, as the case may be, to object to or re-examine such Claim in whole or part.

**11.3.**   **Specific Purposes.**  In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction for each of the following specific purposes after Confirmation of the Plan:

**11.3.1.**   to modify the Plan after Confirmation, pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules;

**11.3.2.**   to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Plan, the Trust Documents or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

**11.3.3.**   to assure the performance by the Disbursing Agent and the Trust of their respective obligations to make distributions under the Plan;

**11.3.4.**   to enforce and interpret the terms and conditions of the Plan, the Plan Documents, and the Trust Documents, and to enter such orders or judgments as are necessary to accomplish such purposes, including, but not limited to, injunctions (i) as are necessary to enforce the title, rights and powers of the Reorganized Debtors and the Trust, and (ii) as are necessary to enable holders of Claims to pursue their rights against any Entity that may be liable therefor pursuant to applicable law or otherwise, including, but not limited to, court orders;

**11.3.5.**   to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters, including without limitation contested matters involving the deduction of interest accrued after the Petition Date on Noteholder Claims, with respect to the Debtors, the Reorganized Debtors or the Trust arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Reorganization Cases;

**11.3.6.**   to hear and determine all applications for compensation of professionals and reimbursement of expenses under Sections 330, 331 or 503(b) of the Bankruptcy Code;

**11.3.7.**   to hear and determine any causes of action arising during the period from the Petition Date through the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtors, the Reorganized Debtors, the Plan Proponents, the Trust, the Trustees, the Official Committees or the Future Claimants

Representative and their respective officers, directors, stockholders, employees, members, attorneys, accountants, financial advisors, representatives and agents;

        **11.3.8.**    to determine any and all motions pending as of Confirmation for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claims resulting therefrom;

        **11.3.9.**    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

        **11.3.10.**    to determine the allowance and/or disallowance of any Claims against or Equity Interests in the Debtors or their Estates, including, without limitation, any objections to any such Claims and/or Equity Interests, and the compromise and settlement of any Claim against or Equity Interest in the Debtors or their Estates;

        **11.3.11.**    to determine all questions and disputes regarding title to the assets of the Debtors or their Estates or the Trust;

        **11.3.12.**    to construe, enforce and resolve all questions and disputes relating to collective bargaining or employment agreements existing or approved by the Bankruptcy Court at or before Confirmation;

        **11.3.13.**    to hear and determine the Asbestos Insurance Actions and the Supersedeas Bond Actions, to construe and take any action to enforce any Asbestos Insurance Settlement Agreement or any settlement of any Supersedeas Bond Action and the releases executed and exchanged in connection therewith, and to issue such orders as may be necessary for the execution, consummation and implementation of any Asbestos Insurance Settlement Agreement or settlement of any Supersedeas Bond Action, and to determine all questions and issues arising thereunder.  Notwithstanding anything herein to the contrary, however, such retention of jurisdiction by the Bankruptcy Court in this Section 11.3.13 shall not be deemed to be a retention of exclusive jurisdiction with respect to any matter described in this Section 11.3.13; rather, any court other than the Bankruptcy Court that has jurisdiction over any matter described in this Section 11.3.13 shall have the right to exercise such jurisdiction;

        **11.3.14.**    to hear and determine any matters related to the Trust's indemnification obligations under Article IV of the Plan and the Trust Documents;

        **11.3.15.**    to hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Reorganization Cases;

        **11.3.16.**    to enter in aid of implementation of the Plan such orders as are necessary, including but not limited to the implementation and enforcement of the releases contained in the Plan, the Injunctions and the other injunctions described herein; and

        **11.3.17.**    to enter and implement such orders as may be necessary or appropriate if any aspect of the Plan, the Trust or the Confirmation Order is, for any reason or in any respect, determined by a court to be inconsistent with, violative of, or insufficient to satisfy any of the

terms, conditions, or other duties associated with any Asbestos Insurance Policies; provided, however, that (i) such orders shall not impair the Asbestos Insurer Coverage Defenses or the rights, claims or defenses, if any, of any Asbestos Insurance Company that are set forth or provided for in the Plan, the Plan Documents, the Confirmation Order, the Bankruptcy Insurance Stipulation, or any other orders entered in the Reorganization Cases, (ii) this provision does not, in and of itself, grant the Bankruptcy Court jurisdiction to hear and decide disputes arising out of or relating to the Asbestos Insurance Policies, and (iii) all interested parties, including any Asbestos Insurance Company, reserve the right to oppose or object to any such motion or order seeking such relief.

**11.4.   District Court Jurisdiction.** The District Court shall, without regard to the amount in controversy, retain exclusive jurisdiction after Confirmation to hear and determine (i) any motion pursuant to Section 8.19 of the Plan to extend the Third Party Injunction to an Asbestos Insurance Company and (ii) any motion pursuant to Section 9.3.3 to terminate, or reduce or limit the scope of the Asbestos Insurance Entity Injunction with respect to an Asbestos Insurance Company, and shall be deemed to have withdrawn the reference from the Bankruptcy Court for such purpose.

**11.5.   Reservation of Rights.** Except as otherwise agreed in the Bankruptcy Insurance Stipulation or the modifications of the Plan set forth in Exhibit A thereto, nothing contained in the Plan will (i) constitute a waiver of any claim, right or cause of action that a Debtor, a Reorganized Debtor, or the Trust, as the case may be, may hold against the insurer under any policy of insurance or insurance agreement, except to the extent the insurer is a Settling Insurance Company; or (ii) limit the assertion, applicability, or effect of any Asbestos Insurer Coverage Defense.

**11.6.   Interpretation of Certain Terms.** When used in the Plan, the term "Claim" shall be broadly construed to include all manner and types of claim, whenever and wherever such claim may arise, anywhere in the world, and shall include, but not be limited to, Asbestos Personal Injury Claims. Likewise, when used in the Plan, the terms "Asbestos Personal Injury Claim" and "Asbestos Property Damage Claim" shall be broadly construed and shall include, but not be limited to, claims that may or may not presently constitute "claims" within the meaning of Section 101(5) of the Bankruptcy Code, and "demands" within the meaning of Section 524(g)(5) of the Bankruptcy Code.

**11.7.   The Official Committees and The Future Claimants Representative.** Except as set forth below, the Official Committees and the Future Claimants Representative shall continue in existence until the Effective Date. The Debtors shall pay the reasonable fees and expenses incurred by the Official Committees and the Future Claimants Representative through the Effective Date, in accordance with the fee and expense procedures promulgated during the Reorganization Cases (but only to the extent such fees and expenses are not Trust Expenses, in which case those portions of such fees and expenses shall be paid as Trust Expenses in accordance with the Trust Agreement, with the remainder to be paid by the Debtors). After the Effective Date, the rights, duties and responsibilities of the Future Claimants Representative shall be as set forth in the Trust Agreement. On the Effective Date, the Official Committees shall be dissolved (except that (a) the Unsecured Creditors Committee, the Asbestos Claimants Committee and the Future Claimants Representative shall continue in existence and have

159

standing and capacity to (i) prosecute their pre-Effective Date intervention in or commencement of any other adversary proceedings, (ii) object to any proposed modification of the Plan, (iii) object to or defend the Administrative Expense Claims of professionals employed by or on behalf of the Estates, (iv) participate in any appeals of the Confirmation Order or the Plan A Approval Order (if applicable), (v) participate as a party in interest in any proceeding involving Section 524(g) of the Bankruptcy Code, (vi) prepare and prosecute applications for the payment of fees and reimbursement of expenses, (vii) participate as a party in interest in any proceeding relating to the Trust, and (viii) commence or continue any adversary proceeding, claim objection or other proceeding as expressly provided for in the Plan; and (b) the Equity Committee shall continue in existence and have standing and capacity with respect to items (ii), (iii), (iv) and (vi) above) and the members thereof released and discharged of and from all further authority, duties, responsibilities, liabilities and obligations related to, or arising from, the Reorganization Cases. The Reorganized Debtors shall pay the reasonable fees and expenses incurred by the Unsecured Creditors Committee, the Asbestos Claimants Committee and the Future Claimants Representative relating to any post-Effective Date activities authorized hereunder. Nothing in this Section 11.7 shall purport to limit or otherwise affect the rights of the United States Trustee under Section 502 of the Bankruptcy Code or otherwise to object to Claims or requests for Allowance of Administrative Expenses.

**11.8.    Revocation Of Plan**.  The Plan Proponents reserve the right to revoke and withdraw the Plan as to any Debtor prior to entry of the Confirmation Order.  If the Plan Proponents revoke or withdraw the Plan, or if Confirmation of the Plan as to such Debtor or Debtors does not occur, then, with respect to such Debtor or Debtors, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against such Debtor or Debtors, or any other Entity (including the Plan Proponents), or to prejudice in any manner the rights of such Debtor or Debtors, or such Entity (including the Plan Proponents) in any further proceedings involving such Debtor or Debtors.

**11.9.    Modification Of Plan**.

**11.9.1.**    The Plan Proponents may propose amendments to or modifications of the Plan under Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date. After Confirmation, the Plan Proponents (or, as the case may be, the Reorganized Debtors after the Effective Date) may remedy any defects or omissions or reconcile any inconsistencies in the Plan, or the Confirmation Order or any other order entered for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan, so long as the interests of the holders of Allowed Claims are not materially and adversely affected thereby.  Anything in the Plan or in any Plan Document to the contrary notwithstanding, following Confirmation but prior to the Effective Date, no Plan Document shall be modified, supplemented, changed or amended in any material respect except with the consent of all Plan Proponents or, in the absence of such consent, with the approval of the Bankruptcy Court on notice to all Plan Proponents and such other Entities as the Bankruptcy Court may require and a hearing.  In the event of a conflict between the terms or provisions of the Plan and the Trust Documents, the terms of the Plan shall control the Trust Documents.

**11.9.2.**    Notwithstanding the provisions of Sections 6.7.3 and/or 11.9.1 of the Plan, no modification, supplement, change or amendment to the Plan that would adversely affect

any of the rights of the Pneumo Parties under the Plan B Settlement Agreement shall be made without the consent of the Plan Proponents and Cooper LLC and Cooper Industries, Ltd. and, to the extent directly related to Pneumo Abex or PCT's rights or obligations under the Plan B Settlement and directly related to Pneumo Abex or PCT, Pneumo Abex and PCT (such approval of Pneumo Abex and PCT not to be unreasonably withheld).

**11.10. Certain Provisions Regarding Thornwood**. Thornwood or its affiliated designee shall have the same rights and powers that the Plan Proponents are provided under the Plan or Plan Documents, including, but not limited to, with respect to any modifications or amendments to the Plan or the Plan Documents, any waiver of conditions to Confirmation or consummation of the Plan, the classification and/or treatment of any creditor or equity class in the U.S. and/or U.K. proceedings and any rights regarding the U.K. Debtors (including, but not limited to, as to the CVAs), the cramdown of the Plan, the Plan's tax consequences, the corporate governance of Reorganized Federal-Mogul, the Exit Facilities and any and all other rights reserved for, or afforded to, the Plan Proponents under the Plan and Plan Documents (including as set forth in Section 6.7.3 of the Plan).

**11.11. Modification Of Payment Terms**. The Reorganized Debtors reserve the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon the consent of the holder of such Allowed Claim.

**11.12. Entire Agreement**. The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions, negotiations, understandings and documents. No Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for in the Plan or the other Plan Documents or as may hereafter be agreed to by the affected parties in writing.

**11.13. Headings**. Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

**11.14. Administrative Claims Bar Date**. Unless otherwise ordered by the Bankruptcy Court, except for Administrative Claims for amounts incurred by the U.S. Debtors in the ordinary course of business during these Reorganization Cases, the Confirmation Order shall operate to set a bar date for Administrative Claims against the U.S. Debtors (the "*Administrative Claims Bar Date*"), which bar date shall be the first Business Day that is at least 120 days after the Effective Date. Claimants holding Administrative Claims against the Debtors not paid prior to the Administrative Claims Bar Date may submit a Request for Payment of Administrative Expense on or before such bar date. The notice of Confirmation to be served and delivered pursuant to Bankruptcy Rules 2002 and 3020(c) will set forth such date and constitute notice of the Administrative Claims Bar Date. The Reorganized Debtors and any other party in interest will have ninety days after the Administrative Claims Bar Date to review and object to such Claims before a hearing for determination of such Administrative Claims is held by the Bankruptcy Court, provided that such ninety-day period of review may be extended by the Bankruptcy Court upon the request of any of the Plan Proponents.

**11.15.  Governing Law.**  Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable or where the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

**11.16.  No Interest.**  Except with respect to unimpaired Allowed Claims, or as expressly stated in the Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date shall be Allowed on any Claim or Equity Interest.

**11.17.  Limitation On Allowance.**  No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim or Equity Interest except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

**11.18.  Estimated Claims.**  To the extent any Claim is estimated for any purpose other than for voting, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

**11.19.  Consent To Jurisdiction.**  Upon default under the Plan, the Reorganized Debtors, the Trust and the Trustees, the Future Claimants Representative, and the Trust Advisory Committee, respectively, consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default, except for matters pertaining solely to the CVAs, in which respect all such parties consent to the jurisdiction of the U.K. Court.

**11.20.  Successors And Assigns.**  The rights, duties and obligations of any Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

**11.21.  Non-Debtor Waiver of Rights.**  Non-Debtor parties shall have the right to voluntarily waive any rights, benefits or protections that are afforded to them under the provisions of the Plan or any order issued in furtherance of the Plan, and such waiver shall supersede such rights, benefits or protections.  Any such waiver shall only be effective if such party expressly and specifically waives in writing one or more of such rights, benefits or protections.  Any such Entity which waives its rights under the Plan shall nonetheless remain subject to and bound by all other provisions of the Plan, including, but not limited to the discharge, the releases, the Injunctions and all other injunctions thereunder.

**11.22.  Consistent United States Federal Tax Reporting.**  The Trust, the Reorganized Hercules-Protected Entities, and the other Reorganized Debtors agree to report the transactions described in Article IV of the Plan on their respective United States Federal and State tax returns, to the extent required to be filed, in a manner consistent with how Reorganized Federal-Mogul reports such transactions for U.S. tax purposes, which shall be provided by Federal-Mogul to the Trust, the Hercules-Protected Entities, and the other Debtors prior to the Effective Date.  In addition, Reorganized Federal-Mogul shall agree to cause each of its Affiliates that are not U.S.

Debtors to report the transactions described in Article IV of the Plan on their respective U.S. Federal and State tax returns, to the extent required to be filed, pursuant to this Section 11.22.

**11.23. Duty to Cooperate**. Nothing in the Plan, the Plan Documents or the Confirmation Order shall relieve (by way of injunction or otherwise) any entity (including the Trust, any Reorganized Debtor, and any non-Debtor Affiliate) that is or claims to be entitled to indemnity under an Asbestos Insurance Policy from any duty to cooperate that may be required by any such insurance policy or under applicable law with respect to the defense and/or settlement of any Claim for which coverage is sought under such Asbestos Insurance Policy. To the extent that any entity incurs costs in satisfying such duty to cooperate with respect to Asbestos Personal Injury Claims, the Trust shall reimburse such entity for all such reasonable out-of-pocket expenses.

**11.24. Notices**. All notices, requests and demands required or permitted to be provided to the Debtors, Reorganized Debtors or the Plan Proponents under the Plan, in order to be effective, shall be in writing, and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, to the addresses set forth below:

**THE DEBTORS:**

FEDERAL-MOGUL CORPORATION
Attention: General Counsel
26555 Northwestern Highway
Southfield, MI 48034
Telephone: (248) 354-7055
Facsimile: (248) 354-8103

**COUNSEL FOR THE DEBTORS:**

| | | |
|---|---|---|
| SIDLEY AUSTIN LLP | SIDLEY AUSTIN LLP | PACHULSKI STANG |
| James F. Conlan, Esq. | Richard T. Peters, Esq. | ZIEHL & JONES LLP |
| Larry J. Nyhan, Esq. | Kevin T. Lantry, Esq. | Laura Davis Jones, Esq. |
| Kenneth P. Kansa, Esq. | 555 West Fifth Street, Suite 4000 | James E. O'Neill, Esq. |
| One South Dearborn Street | Los Angeles, CA 90013 | 919 North Market Street |
| Chicago, IL 60603 | Telephone: (213) 896-6000 | 17th Floor |
| Telephone: (312) 853-7000 | Facsimile: (213) 896-6600 | Wilmington, DE 19801 |
| Facsimile: (312) 853-7036 | | Telephone: (302) 652-4100 |
| | | Facsimile: (302) 652-4400 |

**COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:**

| | | |
|---|---|---|
| SONNENSCHEIN NATH & | SONNENSCHEIN NATH & | THE BAYARD FIRM |
| ROSENTHAL LLP | ROSENTHAL LLP | Charlene D. Davis, Esq. |
| Peter D. Wolfson, Esq. | Robert B. Millner, Esq. | Eric Sutty, Esq. |
| John A. Bicks, Esq. | Thomas A. Labuda, Jr., Esq. | 222 Delaware Avenue, Suite 900 |
| Jo Christine Reed, Esq. | 8000 Sears Tower | Wilmington, DE 19801 |
| 1221 Avenue of the Americas | Chicago, IL 60606 | Telephone: (302) 655-5000 |

New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800

Telephone: (312) 876-8000
Facsimile: (312) 876-7934

Facsimile: (302) 658-6395

**COUNSEL FOR THE ASBESTOS CLAIMANTS COMMITTEE:**

CAPLIN & DRYSDALE,
   CHARTERED
Elihu Inselbuch, Esq.
375 Park Avenue, 35th Floor
New York, NY 10152
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

CAPLIN & DRYSDALE,
   CHARTERED
Peter Van N. Lockwood, Esq.
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

CAMPBELL & LEVINE, LLC
Marla Eskin, Esq.
Chase Manhattan Centre, 15th Fl.
1201 N. Market Street
Wilmington, DE 19801
Telephone: (302) 426-1900
Facsimile: (302) 426-9947

**COUNSEL TO JPMORGAN CHASE BANK, N.A., AS ADMINISTRATIVE AGENT**

SIMPSON THACHER &
   BARTLETT LLP
Steven M. Fuhrman, Esq.
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

RICHARDS, LAYTON &
   FINGER, P.A.
Mark D. Collins, Esq.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
Telephone: (302) 651-7700
Facsimile: (302) 658-6548

**COUNSEL FOR THE FUTURE CLAIMANTS REPRESENTATIVE:**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
James L. Patton, Jr., Esq.
Edwin J. Harron, Esq.
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

**COUNSEL FOR THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS:**

BELL, BOYD & LLOYD LLP
Robert V. Shannon, Esq.
Adam R. Schaeffer, Esq.
70 West Madison Street
Three First National Plaza
Suite 3300
Chicago, IL 60602
Telephone: (312) 807-4315
Facsimile: (312) 827-8010

BIFFERATO GENTILOTTI LLC
Ian Connor Bifferato, Esq.
800 N. King Street
Wilmington, DE 19801
Telephone: (302) 429-1900
Facsimile: (302) 429-8600

Dated: November 5, 2007

FEDERAL-MOGUL CORPORATION (for itself and on behalf of the Affiliated Debtors, as Debtors and Debtors in Possession)

By:   /s/ Robert L. Katz

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By:   /s/ Thomas A. Labuda

OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS

By:   /s/ Peter Van N. Lockwood

JPMORGAN CHASE BANK, N.A., AS ADMINISTRATIVE AGENT

By:   /s/ Steven M. Fuhrman

ERIC D. GREEN, as THE FUTURE CLAIMANTS REPRESENTATIVE

By:   /s/ Edwin J. Harron

OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

By:   /s/ David F. Heroy

## COUNSEL FOR THE PLAN PROPONENTS

**COUNSEL FOR THE DEBTORS:**

| | | |
|---|---|---|
| SIDLEY AUSTIN LLP | SIDLEY AUSTIN LLP | PACHULSKI STANG |
| James F. Conlan, Esq. | Richard T. Peters, Esq. |   ZIEHL & JONES LLP |
| Larry J. Nyhan, Esq. | Kevin T. Lantry, Esq. | Laura Davis Jones, Esq. |
| Kenneth P. Kansa, Esq. | 555 West Fifth Street, Suite 4000 | James E. O'Neill, Esq. |
| One South Dearborn Street | Los Angeles, CA 90013 | 919 North Market Street |
| Chicago, IL 60603 | Telephone: (213) 896-6000 | 17th Floor |
| Telephone: (312) 853-7000 | Facsimile: (213) 896-6600 | Wilmington, DE 19801 |
| Facsimile: (312) 853-7036 | | Telephone: (302) 652-4100 |
| | | Facsimile: (302) 652-4400 |

**COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:**

| | | |
|---|---|---|
| SONNENSCHEIN NATH & | SONNENSCHEIN NATH & | THE BAYARD FIRM |
|   ROSENTHAL LLP |   ROSENTHAL LLP | Charlene D. Davis, Esq. |
| Peter D. Wolfson, Esq. | Robert B. Millner, Esq. | Eric Sutty, Esq. |
| John A. Bicks, Esq. | Thomas A. Labuda, Jr., Esq. | 222 Delaware Avenue, Suite 900 |
| Jo Christine Reed, Esq. | 8000 Sears Tower | Wilmington, DE 19801 |
| 1221 Avenue of the Americas | Chicago, IL 60606 | Telephone: (302) 655-5000 |
| New York, NY 10020-1089 | Telephone: (312) 876-8000 | Facsimile: (302) 658-6395 |
| Telephone: (212) 768-6700 | Facsimile: (312) 876-7934 | |
| Facsimile: (212) 768-6800 | | |

**COUNSEL FOR THE ASBESTOS CLAIMANTS COMMITTEE:**

| | | |
|---|---|---|
| CAPLIN & DRYSDALE, | CAPLIN & DRYSDALE, | CAMPBELL & LEVINE, LLC |
|   CHARTERED |   CHARTERED | Marla Eskin, Esq. |
| Elihu Inselbuch, Esq. | Peter Van N. Lockwood, Esq. | Chase Manhattan Centre, 15th Fl. |
| 375 Park Avenue, 35th Floor | One Thomas Circle, N.W. | 1201 N. Market Street |
| New York, NY 10152 | Washington, D.C. 20005 | Wilmington, DE 19801 |
| Telephone: (212) 319-7125 | Telephone: (202) 862-5000 | Telephone: (302) 426-1900 |
| Facsimile: (212) 644-6755 | Facsimile: (202) 429-3301 | Facsimile: (302) 426-9947 |

**COUNSEL TO JPMORGAN CHASE BANK, N.A., AS ADMINISTRATIVE AGENT**

| | |
|---|---|
| SIMPSON THACHER & | RICHARDS, LAYTON & |
|   BARTLETT LLP |   FINGER, P.A. |
| Steven M. Fuhrman, Esq. | Mark D. Collins, Esq. |
| 425 Lexington Avenue | One Rodney Square |
| New York, NY 10017 | P.O. Box 551 |
| Telephone: (212) 455-2000 | Wilmington, DE 19899 |
| Facsimile: (212) 455-2502 | Telephone: (302) 651-7700 |
| | Facsimile: (302) 658-6548 |

**COUNSEL FOR THE FUTURE CLAIMANTS REPRESENTATIVE:**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
James L. Patton, Jr., Esq.
Edwin J. Harron, Esq.
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

**COUNSEL FOR THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS:**

BELL, BOYD & LLOYD LLP
Robert V. Shannon, Esq.
Adam R. Schaeffer, Esq.
70 West Madison Street
Three First National Plaza
Suite 3300
Chicago, IL 60602
Telephone: (312) 807-4315
Facsimile: (312) 827-8010

BIFFERATO GENTILOTTI LLC
Ian Connor Bifferato, Esq.
Buckner Building
1308 Delaware Avenue
Wilmington, DE 19806
Telephone: (302) 429-1900
Facsimile: (302) 429-8600

## EXHIBITS TO THE PLAN

| | |
|---|---|
| 1.1.4 | Addendum to Joint Plan of Reorganization (Pneumo Abex "Plan A" Settlement) |
| 1.1.9 | Schedule of Affiliates |
| 1.1.11 | Schedule of Affiliated Subsidiaries |
| 1.1.14 | Ancillary CVAs |
| 1.1.50 | Asset Values for U.K. Debtors |
| 1.1.70 | Dan=Loc Deed of Special Indemnity and Dan=Loc Deed of Guarantee |
| 1.1.95 | Schedule of Known On-Site Environmental Claims |
| 1.1.173 | Principal CVAs |
| 1.1.191 | Principal Terms and Conditions of the Reorganized Federal-Mogul Junior Secured PIK Notes |
| 1.1.192 | Principal Terms and Conditions of the Reorganized Federal-Mogul Secured Term Loan Agreement |
| 1.1.198 | Settling Asbestos Insurance Companies |
| 1.1.217 | Form of Asbestos Personal Injury Trust Agreement and Asbestos Personal Injury Trust Distribution Procedures |
| 1.1.240 | Warrant Agreement |
| 3.1.12 | Schedule of Affiliate Claims Treatment |
| 3.20 | Classification and Treatment of Claims Against and Equity Interests in all Remaining U.S. Debtors and U.K. Debtors |
| 4.5.11 | Power of Attorney |
| 5.1.2 | Schedule of Rejected Contracts |
| 8.3.6(a) | Stock Option Agreement relating to Thornwood Call Option |
| 8.3.6(b) | September 25, 2005 Letter Agreement Relating to Call Option |
| 8.3.6(c) | Form of Loan Agreement for $100,000,000 Term Loan |
| 8.3.9 | Form of Registration Rights Agreement |
| 8.3.11 | Form of Lockup Agreement |
| 8.3.12(1) | Proposed Certificate of Incorporation of Reorganized Federal-Mogul Corporation |
| 8.3.12(2) | Proposed Bylaws of Reorganized Federal-Mogul Corporation |
| 8.3.13 | Initial Board of Directors of Reorganized Federal-Mogul Corporation |
| 8.3.15 | Form of Stock Option Agreement |
| 8.4 | Initial Boards of Directors for the Affiliated Debtors of Reorganized Federal-Mogul Corporation |
| 8.15.2.2 | Stock Election Form |
| 8.15.2.2A | List of Record Holders of Certain Unsecured Claims |
| 8.22 | Plan B Settlement Agreement |
| 8.24 | Plan Support Agreement |
| 8.26 | Settlement Agreement with Certain Holders of Asbestos Property Damage Claims |

The exhibits to the Plan are as previously filed with the Court on June 5, 2007 (D.I. 12620, 12621, 12622), as such exhibits may have been modified through the Modifications (as defined in the Order Confirming Fourth Amended Joint Plan of Reorganization, a form of which was filed with the Bankruptcy Court on November 6, 2007 (Docket No. 582593609)).